**UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**

PINK LOTUS ENTERTAINMENT, LLC )
                                    )
        Plaintiff                  )
                                    )    Civil Action No. 1:11-cv-3048
        v.                     )
                                    )
JOHN DOES 1-20               )
                                    )
        Defendants             )
_____ )

## MOTION TO QUASH SUBPOENA AND DISMISS JOHN DOE 98.228.184.81

Defendant John Doe 98.228.184.81, acting pro se, respectfully urges this Court to put a stop to this case. Plaintiff has made an unsupported allegation that this court has personal jurisdiction over all defendants. Plaintiff has invoked the power of this court to issue subpoenas to internet service providers (ISPs), such as Comcast Cable Communications, but by responding to the subpoena, Comcast and the other ISPs do substantial harm to the ability of the John Doe defendants to represent their interests.

Fortunately, this story has been previewed in several other courts, and this Court may look to those courts to provide and example for how the story should end. John Doe 98.228.184.81 respectfully urges this Court to do as the federal courts in Texas and West Virginia have done, or to follow the lead set by a court here in the Northern District of Illinois (See Exhibit 1). The Court should dismiss the complaint outright, or sever or dismiss all defendants, and quash all subpoenas and order all other remedies as the Court deems appropriate.

This lawsuit is one of many suits that have been filed in federal courts around the United States, beginning in the District of Columbia and spreading to West Virginia, Texas, and Illinois. The suits have been widely reported in the popular media, especially in media with a focus on the internet. It is a common tactic for plaintiffs to demand payment of thousands of dollars to settle claims, and to back those demands with the threat of a lawsuit claiming statutory damages of up to $150,000. The tactics and typical timeline for the litigation models has been spelled out in articles such as *A file-sharing suit with my name on it? (FAQ),* CNET.com, http://news.cnet.com/8301-31001_3-20006528-261.html, retrieved on 6/1/11, attached as Exhibit 2.

The common theories asserted by plaintiffs in these suits are: (1) plaintiffs have used the BitTorrent internet protocol to compile a list of internet IP addresses representing person who have engaged in copyright infringement, (2) plaintiffs claim those IP addresses can be reliably translated into names of individual defendants, (3) plaintiffs claim a need for expedited discovery to force ISPs to translate IP addresses into names, and (4) plaintiffs claim that all of the John Doe defendants are subject to personal jurisdiction in whatever venue the action is filed.

I respectfully urge this Court not to accept the Plaintiff's bald assertions as fact, but instead to consider the claims the Plaintiff makes in this case in light of the resolution of similar claims made in other cases in this District and in other federal courts around the country.

I will not attempt to interpret federal law as it applies to this case. Instead, I hope to rely on a brief and memorandum of law filed by Amicus Electronic Frontier Foundation (EFF) which argues those issues in a nearly identical case also pending in the Northern District of Illinois, *First Time Videos v. Does 1-500,* 1:10-cv-06254. The complaint in *First Time Videos* is nearly identical to the complaint in this case except for the name of the plaintiff pornography company

-2-

and the works that were allegedly infringed. The arguments in the EFF brief from *First Time Videos* apply equally to discussion of the issues at play in this case. The EFF amicus is attached to this filing as Exhibit 3.

Where EFF and other amici have argued the issues presented by this case when those issues appeared in other courts, those courts have for the most part found that the John Doe defendants required additional protection. In fact, EFF has been appointed ad litem in several similar cases precisely to protect those interests. An order by a federal court in Texas appointing EFF to serve this role is attached to this filing as Exhibit 4.

Four examples of orders entered by federal courts under nearly identical circumstances in similar BitTorrent cases are presented below. Since the complaints, tactics, and posture of the parties are so similar between these, all of these ruling should be read as persuasive in the context of the current case.

First, from the federal courts of West Virginia:

THIRD WORLD MEDIA v. DOES 1-1,243
3:10-cv-00090 in WVND (Northern District of West Virginia)
PACER #26568
Filed 9/24/2010
Terminated 1/11/2011

> Court's ORDER #66: "…All defendants except Doe 1 are hereby SEVERED from this action. Civil Action No. 3:10-CV-90 SHALL BE assigned to John Doe No.1 as an individual defendant. (Entered: 12/16/2010)"

Substantially identical orders were entered at about the same time in all nine cases brought by a single attorney in the Northern District of West Virginia. See the attached article, "*Judge kills massive P2P porn lawsuit, kneecaps copyright troll,*" ArsTechnica.com,

http://arstechnica.com/tech-policy/news/2010/12/judge-kills-massive-p2p-porn-lawsuit-kneecaps-copyright-troll.ars, retrieved on 6/1/2011, listing case numbers for all cases similarly resolved, attached as Exhibit 5.

Next, from the federal courts of Texas:

---

LFP INTERNET GROUP LLC v. DOES 1-1,106
3:10-cv-02096 in TXND (Northern District of Texas)
PACER #200468
Filed 10/19/2010

Court's ORDER #7: "All Defendants except Doe 1 are hereby SEVERED from this action. The subpoenas on the ISPs listed in Exhibit A of Plaintiff's Complaint are hereby QUASHED as to all Defendants, Does 1-1,106. (Entered: 02/04/2011)"

An excerpt from Court's ORDER #8: "[T]he Court VACATES its Order granting Plaintiff's Motion for Leave to Take Discovery. Additionally, the Court enters this Order to Show Cause why the Court should not appoint an attorney ad litem to represent Defendant Doe's interests in the Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference." (Entered: 02/15/11).

Substantially identical orders were entered at about the same time in sixteen cases brought by a single attorney in the Northern District of Texas. See attached article, "*Texas chainsaw massacre: senior judge "severs" most P2P lawsuits*," ArsTechnica.com, http://arstechnica.com/tech-policy/news/2011/02/texas-chainsaw-massacre-senior-judge-severs-most-p2p-lawsuits.ars, retrieved on 6/1/2011, listing case numbers for all cases similarly resolved, attached as Exhibit 6.

Third, from a federal court in Illinois:

---

CP PRODUCTION, INC v. DOES 1-300
1:10-cv-06255 in ILND (Northern District of Illinois)
PACER #24810
Filed 9/29/10
Terminated 2/7/2011

An excerpt from Court's ORDER #32: "It is unnecessary to set out all of the reasons that dismissal of this action is the proper course—a few of the principal difficulties will suffice [...] [T]here is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and—more importantly—as to whom CP's counsel could readily have ascertained that fact. Moreover, if the 300 unnamed defendants have in fact infringed any CP copyrights, each of those infringements was separate and apart from the others. No predicated has been shown for thus combining 300 separate actions on the cheap [...] As if those things were not enough to call for dismissal (and they are), CP's placement of venue in this judicial district is more than suspect. CP itself is an Arizona-based Arizona corporation, and Complaint P.7 is totally (and unpersuasively) speculative in its assertions as to venue regarding the "Doe" defendants (see 28 U.S.C. 1391(b)). [...] CP is ordered to direct the [Internet Service] Provider to notify (at CP's expense) all those to whom the Provider has previously given notice of subpoena of (1) the fact of this dismissal and (2) the fact that the Provider will take no further action in connection with the now-quashed subpoena, so that those persons are free to ignore the matter."

Court's ORDER #33: "MINUTE entry before Honorable Milton I. Shadur: Status hearing
set for 3/9/2011 at 09:00 AM. Counsel will be expected to discuss what steps should be
taken to apprise all of the targeted "Doe" defendants that they will not be subject to any
further trouble or expense as a result of this ill-fated (as well as ill-considered) lawsuit.
(see minute order for further details) Mailed notice (srn,) (Entered: 03/02/2011)."

As noted in the first paragraph of this motion, Order 32 is attached as Exhibit 1.

And finally, from a federal court in Illinois, ruling on a complaint that was substantially
similar to the complaint at issue in this case:

VPR INTERNATIONALE v. DOES 1-1,017
2:11-cv-02068-HAB-DGB in ILCD (Central District of Illinois)
Filed 3/8/11

Excerpts from Court's ORDER #15: "Moreover, VPR ignores the fact that IP subscribers
are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article
of a raid by federal agents on a home that was linked to downloaded child pornography.
The identity and location of the subscriber were provided by the ISP. The desktop
computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.
Federal agents returned the equipment after determining that no one at the home had
downloaded the illegal material. Agents eventually traced the downloads to a neighbor
who had used multiple IP subscribers' Wi-Fi connections (including a secure connection
from the State University of New York). See Carolyn Thompson, Bizarre Pornography
Raid Underscores Wi-Fi Privacy Risks (April 25, 2011),
http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/ "

"The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer. The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."

"In its order denying the motion for expedited discovery, the court noted until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of perversion of the purpose and intent" of class action. Order, d/e 9."

A complete copy of this motion is attached as Exhibit 7.

I do not claim to represent the interests of any other John Doe defendants in this case. However, on behalf of the many similarly situated Doe defendants in this case that share an interest in basic constitutional principles, I respectfully urge this Court to put and end to Plaintiff's fishing expedition. The Court should dismiss the complaint, sever all of the Doe defendants, quash the subpoenas that Plaintiff has issued, and order other remedies as the Court deems appropriate.

Dated this 1st day of June, 2011

Respectfully submitted,

John Doe, pro se
IP Address: 98.228.184.81

<u>TABLE OF EXHIBITS</u>

EXHIBIT 1: <u>Memorandum and Order</u>, Docket #32, *CP PRODUCTIONS, INC v. DOES 1-300,*

1:10-cv-06255 filed in ILND, PACER #248010

EXHIBIT 2: *A file-sharing suit with my name on it? (FAQ)*, <u>CNET.com</u>,

http://news.cnet.com/8301-31001_3-20006528-261.html, retrieved on 6/1/11

EXHIBIT 3: <u>BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN</u>

<u>SUPPORT OF MOTION TO QUASH</u>, Docket #31-1, *FIRST TIME VIDEOS v. DOES*

*1-500,* 1:10-cv-06254 filed in ILND, PACER #248009

EXHIBIT 4: <u>ORDER</u> [appointing EEF attorney ad litem], Docket #4, *MICK HAIG*

*PRODUCTIONS E.K. v. DOES 1-670,* 3:10-cv-01900 filed in TXND, PACER #199778

EXHIBIT 5: *Judge kills massive P2P porn lawsuit, kneecaps copyright troll*, <u>ArsTechnica.com</u>,

http://arstechnica.com/tech-policy/news/2010/12/judge-kills-massive-p2p-porn-lawsuit-

kneecaps-copyright-trolls.ars, retrieved 6/1/11

EXHIBIT 6: *Texas chainsaw massacre: senior judge "severs" most P2P lawsuits*,

<u>ArsTechnica.com</u>, http://arstechnica.com/tech-policy/news/2011/02/texas-chainsaw-

massacre-senior-judge-severs-most-p2p-lawsuits.ars, retrieved on 6/1/11

EXHIBIT 7: ORDER, Docket #15, *VPR INTERNATIONALE v. DOES 1-1,017*,

2:11-cv-02068-HAB-DGB filed in ILCD

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CP PRODUCTIONS, INC.,           )
                                )
            Plaintiff,          )
                                )
     v.                         )     No.  10 C 6255
                                )
DOES 1-300,                     )
                                )
            Defendants.         )

MEMORANDUM OPINION AND ORDER

This Court's February 7, 2011 memorandum order ("Order"),
issued sua sponte, began by stating:

> As the caption of this action suggests, it is an
> understatement to characterize it as problematic in
> nature.

Because more than one aspect of the Complaint, as the Order went

on to say, "plainly has the potential to perpetrate the type of

abuse identified in the most recent motion to quash and, indeed,

the motion to quash filed earlier by a Tennessee lawyer who lists

herself as 'Attorney for Doe 300,'" this Court complied with the

mandate of Fed. R. Civ. P. ("Rule") 4(m) by dismissing the action

without prejudice against all 300 putative defendants.

Counsel for plaintiff CP Productions, Inc. ("CP") promptly

countered with a motion seeking reconsideration of the dismissal

order.[1]  This Court reviewed counsel's contentions and continued

---

[1]  Counsel's filing of that motion on the very next day
after the Order was entered suggests that counsel was well aware
of the action's problematic nature and had already marshaled
arguments intended to meet the obvious problems that it appeared
to present.

the motion to April 14 to see what developments might cast further light on the matter.

Now a new motion to quash, filed by another of the "Doe" defendants (obviously a lawyer or well acquainted with legal principles), has provided chapter and verse to demonstrate why this Court was correct the first time around. It is unnecessary to set out all the reasons that dismissal of this action is the proper course--a few of the principal difficulties will suffice.

Among other things, the newest motion demonstrates that there is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and--more importantly--as to whom CP's counsel could readily have ascertained that fact. Moreover, if the 300 unnamed defendants have in fact infringed any CP copyrights (something that this Court will assume to be the case, given the Complaint's allegations that so state), each of those infringements was separate and apart from the others. No predicate has been shown for thus combining 300 separate actions on the cheap--if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.[2]

---

[2] It would constitute a real stretch of the normal meaning of language for CP to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into

As if those things were not enough to call for dismissal
(and they are), CP's placement of venue in this judicial district
is more than suspect. CP itself is an Arizona-based Arizona
corporation, and Complaint ¶7 is totally (and unpersuasively)
speculative in its assertions as to venue regarding the "Doe"
defendants (see 28 U.S.C. §1391(b)).

As indicated earlier, there is more, but this Court sees no
need "[t]o gild refined gold, to paint the lily."[3] This Court
denies CP's motion for reconsideration, vacates the April 14
status hearing date and orders the subpoena issued to the
Internet Service Provider ("Provider") to be quashed. In
addition, CP is ordered to direct the Provider to notify (at CP's
expense) all those to whom the Provider has previously given
notice of CP's subpoena issued to the Provider of (1) the fact of
this dismissal and (2) the fact that the Provider will take no
further action in connection with the now-quashed subpoena, so
that those persons are free to ignore the matter.[4]

_____

Milton I. Shadur
Senior United States District Judge

Date: February 24, 2011

_____

a single lawsuit.

    [3] William Shakespeare, King John act 4, sc. 2, line 11.

    [4] This order is without prejudice to CP's possible pursuit
of its copyright infringement claims on an individual basis.

3

# EXHIBIT 2

CNET News

CNET News

- log in
- join CNET

- Home
- Reviews
- *You are here:* News
- Downloads
- Video

Search

- Latest News
- CNET River
- Latest News
- Webware
- Crave
- Business Tech
- Green Tech
- Wireless
- Security
- Blogs
- Video
- Photos
- More *Menu*

Share

- Del.icio.us
- Facebook
- Stumbleupon
- Newsvine
- Yahoo bookmarks

- Digg
- Reddit
- Google Bookmarks
- Twitter

Media Maverick
June 2, 2010 4:00 AM PDT

# A file-sharing suit with my name on it? (FAQ)

by Greg Sandoval

2       **Share**   36   🌐      1 point

Suing people for illegal file sharing appears to have **made a comeback**.

News that Voltage Pictures, producers
of the Oscar-winning film "The Hurt
Locker," filed a federal copyright
complaint last week against 5,000
alleged file sharers caught many in the
file-sharing community off guard.
Hadn't the film and music industries
**dumped a litigation strategy** in favor
of a much more subtle approach, one
that didn't drag fans into court where
they stood to lose thousands of dollars?



"The Hurt Locker" won six Oscars but
made only $16 million in U.S. box office
sales. Without file sharing, would the flick
have made more?

It's true, the trade groups for the major
players in both these sectors, the Motion Picture Association of America and the
Recording Industry Association of America, gave up suing file sharers. For the
past couple years, they've tried to persuade Internet service providers to suspend
service to first-time copyright offenders--and though they don't like talking about
it much, the MPAA and RIAA would like chronic abusers to be permanently
booted off the networks. None of this, however, would happen without the
accused receiving plenty of warning.

But the latest round of lawsuits isn't being brought by gargantuan entertainment
conglomerates, with their legions of lawyers and deep pools of cash. A dozen or
so little-known film companies, with far fewer resources than the big studios,
have mounted their own legal challenge to file sharing. And these guys appear to
be playing by their own rules. In a few short months, they've filed lawsuits
against a combined 50,000 people. The RIAA in five years filed complaints
against fewer than 40,000. Forget comparisons to the little guy being oppressed

by "the man." The way these smallish filmmakers see it, they are the victims. To them this new chapter in antipiracy is David vs. David.

It likely won't matter to those being sued that these smaller film companies aren't as big or rich. Some people are confused and nervous. Since Friday, when news of the Hurt Locker" suit spread, there's been a lot of speculation about where the lawsuits are headed. Here are a few facts:

**Question: I've received a letter from my ISP notifying me that Voltage Pictures, producer of "The Hurt Locker," has accused me of illegally sharing the movie. The company has requested that my ISP give up my name, home address, and IP and Media Access Control addresses. Can I do anything to prevent this?**
People would likely need to file a motion to quash the subpoena, meaning an attempt to convince the court that they shouldn't have to comply with the subpoena because they're protected by some legal privilege and complying would mean violating that privilege.

Eva Galperin, referral coordinator for the Electronic Frontier Foundation, the advocacy group for tech companies and Internet users, advises those accused in a copyright suit to begin the process by consulting an attorney. For the past several weeks, EFF.org has been soliciting attorneys for help in defending people in the cases brought by Voltage and the other film companies. Galperin also suggested that people check the Web site **subpoenadefense.org**.

**Q: What are the U.S. Copyright Group and Dunlap Grubb Weaver?**
They appear to be one and the same. Thomas Dunlap, the founder of the Dunlap Grubb Weaver law firm, appears to have created the name U.S. Copyright for an antipiracy operation. By all appearances, Dunlap is attempting to turn a profit out of suing accused file sharers and represents the makers of at least 10 films in addition to "The Hurt Locker." According to reports, Dunlap is offering to work free of charge for the film companies in exchange for a large cut of whatever money the operation brings in.

**Q: I've been accused, but I'm innocent. What are my options?**

Again, consult an attorney or the EFF. It's true that the majority of people accused by the RIAA during the music industry's five-year litigation campaign chose to pay the RIAA and settle. There are instances in past cases of people being wrongly accused. Tanya Andersen was accused by the RIAA five years ago of illegal file sharing, but she refused to settle because she said she was innocent. In January, copyright expert and legal blogger **Ben Sheffner** wrote: "The labels took depositions and examined her computer, but couldn't definitively tie Andersen to the illegal downloading. And so they dropped the case."

More recently, CNET reported that Cathi "Cat" Paradiso, a 53-year-old grandmother from Colorado, was **accused of copyright infringement** by several top studios for allegedly pirating such movies as "Zombieland," "Harry Potter," and "South Park." Eventually, her bandwidth provider, Qwest Communications, cleared her of any wrongdoing when employees there discovered Paradiso's network security wasn't set up properly and was compromised. Quest and other ISPs note that in most cases, customers are responsible for properly securing their Wi-Fi.

**Q: How can Voltage and Dunlap be so sure that someone on my network shared files? What about spoofing, dynamic IP addresses, and hacking?**
The debate over how accurately file sharing can be detected has raged for years. When it comes to an Internet protocol address--the number assigned to devices logged in to a computer network--everyone seems to be in agreement that accuracy depends largely on how well bandwidth providers keep track of this information.

## 'Hurt Locker' sharers: Expect docs like this (photos)

   



The same goes for dynamic IP addresses, a term used to describe when a computer is assigned a different address. A static address is one that is assigned and doesn't change. One expert in the content-protection area, who requested anonymity, said ISPs are supposed to know the IP address of any computer at any given time, but he said some ISPs keep better records than others and there is sometimes the possibility of error.

Spoofing is a term used to describe the forging of an IP address, often attempted when a person is trying to cover his or her tracks online. The content-protection expert said that without knowing how Dunlap is collecting IP addresses, it's hard to say how susceptible the company's data is to spoofing. But "in theory" it shouldn't be a problem because "spoofs will not be routable IP addresses," he said. If Dunlap tried to make a connection to a spoofed IP address, it shouldn't be successful because the IP address isn't real.

**Q: If my IP address is among the 5,000 in Voltage's lawsuit, how long before I receive a settlement letter?**
Jon Harrison, a photographer from Irving, Texas, shared his experience with CNET on Monday. He provided documentation given to him by Verizon, his bandwidth provider, and by Dunlap. It shows that it was more than two months from the time he is alleged to have illegally shared a copy of the movie "Far Cry" until the time he heard from Dunlap. The company informed him last week that if he paid $1,500 before June 11, 2010, he could avoid being named in the lawsuit and possibly paying as much as $150,000 for each infringing act.

No accused file sharer anywhere has been required to pay such an amount.

 **Greg Sandoval**
Like 49          Full Profile   E-mail Greg Sandoval

Greg Sandoval covers media and digital entertainment for CNET News. Based

in New York, Sandoval is a former reporter for The Washington Post and the Los Angeles Times.

- Reviews
- Cell Phones
- Camcorders
- Digital Cameras
- Laptops
- GPS
- TVs
- Car Tech
- All Reviews

- News
- Business Tech
- Corrections
- Crave
- Cutting Edge
- Green Tech
- Security
- Wireless
- All News

- Downloads
- Windows
- Mac
- Mobile
- Webware
- All Downloads
- Software deals
- Add your software

- Video
- Buzz Report
- CNET Top 5
- Loaded
- Prizefight
- Apple Byte
- All Videos

- More
- About CBS Interactive
- CNET Forums
- About CNET
- CNET Mobile
- CNET site map
- CNET Widgets
- Customer Help Center
- Newsletters
- Permissions
- RSS

- Join us on
- Facebook
- Twitter
- YouTube

# POPULAR TOPICS:

- Apple iPhone,
- Apple iPod,
- LCD TV,
- Apple iPad,
- Smartphones,
- Windows 7,
- CES 2011,
- Google Android,
- HTC phones,
- Android phones

- © 2011 CBS Interactive. All rights reserved.
- Privacy Policy
- Ad Choice
- Terms of Use
- Mobile User Agreement
- Visit other CBS Interactive sites: [ Select Site ]

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST TIME VIDEOS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:10-cv-06254 |
| | ) | |
| v. | ) | Judge Castillo |
| | ) | |
| DOES 1-500 | ) | Magistrate Judge Mason |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION IN
SUPPORT OF MOTION TO QUASH SUBPOENA**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

I.   Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast
     Majority of the Defendants. ....................................................................................... 4

     A.   Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal
          Jurisdiction Over the Defendants Based on the Domicile of the Defendants. .............. 5

     B.   Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal
          Jurisdiction Over the Defendants Based on Alleged Acts of Copyright Infringment
          Occurring in "Every Jurisdiction, Including This One." ................................................ 6

     C.   Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts. ............................. 11

II.  Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely
     Disparate Alleged Acts. ............................................................................................... 12

III. Plaintiff Has Not Satisfied the Requirements Imposed by the First Amendment On
     Litigants Seeking to Unmask Anonymous Speakers. ..................................................... 16

     A.   The Right to Engage in Anonymous Speech is Protected by the First Amendment. ....... 17

     B.   Because Plaintiff's Proposed Discovery Cannot as Proposed Survive the Scrutiny
          Required by the First Amendment, Plaintiff's Motion Must Be Denied. ....................... 21

          1.   Plaintiff Has Not Made the Requisite *Prima Facie* Case for Each Defendant. ..... 21

          2.   Given Plaintiff's Meager Factual Showing and the Immense Harm to
               Defendants that Would Occur if Plaintiff's Motion Was Granted, Defendants'
               First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Their
               Identities. ............................................................................................................ 23

          3.   Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and
               Its Efforts to Unmask Them. ................................................................................ 24

CONCLUSION ................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**

*Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516 (5th Cir. 2010) ........................................ 15

*Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04-C-6900, 2005 U.S.
Dist. LEXIS 6244, slip op. (N.D. Illinois February 23, 2005) .................................................... 6

*ALS Scan v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002) .................................... 7, 8

*Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620 (N.D. Ill. 1998) .................................... 15

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208
(4th Cir. 2002) ........................................................................................................................... 11

*Best Western Int'l v Doe*, No. CV-06-1537-PHX-DGC, 2006 WL 2091695
(D. Ariz. Jul. 25 2006) ................................................................................................................ 20

*BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888
(E.D. Pa. Apr. 2, 2004) ...................................................................................................... 3, 12, 15

*BMG Music v. Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237
(N.D. Cal. July 31, 2006) ........................................................................................................... 14

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999) ........................................ 17, 18

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390
(4th Cir. 2003) ........................................................................................................................... 11

*Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*,
440 F.3d 870 (7th Cir. 2006) ................................................................................................. 4, 11

*Coleman v. Quaker Oats*, 232 F.3d 1271 (9th Cir.2000) ............................................................ 15

*Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999) .................................... 19

*Combat Zone, Inc., v. Does 1-1037*, No. 3:10-cv-00095-JPB -JES
(N.D. W. Va. Dec. 16, 2010) ..................................................................................................... 12

*Combat Zone, Inc., v. Does 1-245*, No. 3:10-cv-00096-JPB -JES
(N.D. W. Va. Dec. 16, 2010) ..................................................................................................... 12

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997) .................................................... 9

*Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. App. 2001) .................................. 20, 22, 24

*Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371 (9th Cir. 1980) ................................. 15

*Doe I and Doe II v. Individuals whose true names are unknown*, 561 F. Supp. 2d 249
(D. Conn. 2008) ........................................................................................................................ 19

*Doe v. 2themart.com*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................................... 17

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ................................................................................. 19

*Elektra Ent. Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581
   (S.D.N.Y. Sept. 8, 2004) ....................................................................................... 3, 22

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464
   (5th Cir. 1985) .................................................................................................... 4

*Fielding v. Hubert Burda Media*, 415 F.3d 419 (5th Cir. 2005) ....................................... 11

*First Time Videos LLC v. Does 1-500*, No. 1:10-cv-06254 (N.D. Ill. Oct. 1, 2010) .................. 16

*Grandbouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987) ............................................... 18

*GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000) ................... 9

*Heartstation, Inc. v. J.L. Indus.*, No. 02 C 5994, 2003 U.S. Dist. LEXIS 5659
   (N.D. Illinois April 3, 2003) ................................................................................. 5

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ............................ 5

*Highfields Capital Mgmt, L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................ 19

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002) ............................................... 7

*In re Does 1-10*, 242 S.W.3d 805 (Tex. Ct. App. 2007) ............................................... 20

*In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244 (D.D.C.) .................................... 17

*In re Verizon Internet Servs. Inc., rev'd on other grounds*, 351 F.3d 1229
   (D.C. Cir. 2003) ............................................................................................. 17

*Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009) ....................................... 19

*Intercon Research Assocs., Ltd. v. Dresser Indus, Inc.*, 696 F.2d 53
   (7th Cir. 1982) .............................................................................................. 15

*Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist.
   LEXIS 27782 (M.D. Fla. Apr. 1, 2004) .................................................................. 14

*Interscope Records v. Does*, 558 F. Supp. 2d 1176 (D. Kan. 2008) .................................. 17

*Jennings v. AC Hydraulic A/S*, 383 F.3d 546 (7th Cir. 2004) ......................................... 8

*Keller v. Henderson*, 359 Ill. App. 3d 605, 834 N.E.2d 930 (Ill. App. 2005) ..................... 6, 7

*Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231 (Cal. Ct. App. 2008) ........................................ 19

*LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992
   (E.D.N.C. Feb. 27, 2008) ................................................................................ 2, 14

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ........................................... 17

*Milliken v. Meyer*, 311 U.S. 457 (1940) ............................................................... 5, 7

*Mobilisa, Inc. v. Doe*, 170 P.3d 712 (Ariz. Ct. App. 2007) ........................................................ 19

*Morris v. Northrop Grumman*, 37 F. Supp. 2d 556 (E.D.N.Y.1999) ............................................ 15

*Mortgage Specialists v. Implode-Explode Heavy Industries*, 999 A.2d 184
    (N.H. 2010) .............................................................................................................................. 19

*Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH
    (N.D. Ga. Aug. 16, 2004) ....................................................................................................... 15

*Nassau County Ass'n of Ins. Agents, Inc. v. Aetna Life & Cas. Co.*,
    497 F.2d 1151 (2d Cir. 1974) ................................................................................................. 13

*New Jersey Mach. Inc. v. Alford Indus. Inc.*, Civ. A. No. 89-1879(JCL),
    1991 WL 340196 (D.N.J. Oct. 7, 1991) ................................................................................. 15

*New York Times v. Sullivan*, 376 U.S. 254 (1964)...................................................................... 18

*Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv-00092-JPB -JES
    (N.D. W. Va. Dec. 16, 2010) ................................................................................................. 12

*Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091-JPB -JES
    (N.D. W. Va. Dec. 16, 2010) ................................................................................................. 13

*Reno v. ACLU*, 521 U.S. 844 (1997)............................................................................................ 17

*Rollins v. Ellwood*, 141 Ill.2d 244, 565 N.E.2d 1302 (Ill. 1990) ................................................. 7

*Salehoo v. Doe*, No. C10-0671JLR, 2010 WL 2773801
    (W.D. Wash. July 12, 2010) ................................................................................................... 20

*Shelley v. Kraemer*, 334 U.S. 1 (1948) ...................................................................................... 18

*Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433 (10th Cir. 1977) ............................................... 18

*Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128 (D.D.C. 2009) ......................................... 2, 20

*Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009).......................................................................... 19

*Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556
    (S.D.N.Y. 2004).......................................................................................................... 15, 17, 18

*Talley v. California*, 362 U.S. 60 (1960) ..................................................................................... 17

*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010)............................................................... 9, 10

*ThermaPure, Inc. v. Temp Air, Inc.*, No. 10-CV-4724, 2010 WL 5419090
    (N.D. Ill. Dec. 22, 2002) ......................................................................................................... 13

*Third World Media, LLC, v. Does 1-1243*, No. 3:10-cv-00090-JPB -JES
    (N.D. W. Va. Dec. 16, 2010) ................................................................................................. 13

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003)........................................... 11

*Twentieth Century Fox Film Corp., et al., v. Does 1-12*, No. C-04-04862
   (N.D. Cal. Nov. 16, 2004) ................................................................................................... 14

*uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 423 (7th Cir. 2010) .................................... 4, 8, 9

*UMG Recordings, Inc. v. Does 1-4*, No. 06-0652, 2006 WL 1343597
   (N.D. Cal. Mar. 6, 2006) ...................................................................................................... 17

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY
   (W.D. Tex. Nov. 17, 2004) ............................................................................................. 14, 16

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*,
   960 F.2d 1080 (1st Cir. 1992) ................................................................................................ 4

*USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010) ...................................... 19

*Virgin Records Am. v. Does 1-44*, No. 1:04-CV-0438-CC
   (N.D. Ga. March 3, 2004) ..................................................................................................... 15

*West Coast Productions v. Does 1-2010*, Case No. 3:10-CV-93
   (N.D. W.Va., Dec. 16, 2010) ........................................................................................... 2, 13

*West Coast Productions, Inc., v. Does 1-535*, No. 3:10-cv-00094-JPB -JES
   (N.D. W. Va. Dec. 16, 2010) ............................................................................................... 12

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ............................................... 4

**Statutes and Legislative Authorities**

17 U.S.C. § 412 ........................................................................................................................... 22

**Other Authorities**

Council, John, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases*, TEXAS
   LAWYER, Oct. 4, 2010 ........................................................................................................ 24

Fed. R. Civ. P. 20 ......................................................................................................................... 13

Hoffman, Lonny Sheinkopf, *Access to Information, Access to Justice: The Role of Presuit
   Investigatory Discovery*, 40 U. MICH. J.L. REFORM 217 (2007) ........................................... 11

## INTRODUCTION

Amicus Electronic Frontier Foundation urges this Court to grant John Doe 173.19.225.14's and John Doe 24.18.103.161's motions to quash. The subpoenas in question, and the complaint upon which they are based should be evaluated in the context in which this case was brought. This case is one of a growing number of other mass copyright lawsuits that are being filed across the country, which have to date affected over 75,000 people[1] nationwide, raise serious problems of fairness, due process, and individual justice. In these cases, different plaintiffs have sued John Doe defendants from all over the country, alleging copyright infringement of pornographic works.

The cases do not, however, appear to be filed with the intention of litigating them. Instead, it seems that the plaintiffs' lawyers hope to take advantage of the threat of an award of statutory damages and attorney's fees, the ignorance of those sued about their potential defenses, as well as the stigma that is associated with downloading pornographic movies, to induce the anonymous defendants into settling the case for a payment of roughly $1,500 to $2,500 dollars. This amount seems chosen to be less than a defendant would likely have to spend just to hire a lawyer to defend the case. And strong defenses exist for many sued: for example, it appears that Plaintiff would be hard-pressed to prove actual damages caused by any particular Defendant and, as described further below, there is a reasonable chance that Plaintiff does not have any basis for seeking statutory damages. Thus, this ruling on whether Plaintiff will be able to obtain the identities of the Defendants may be the last chance that the Court has to ensure that the Defendants are treated justly – and that they will not be induced to settle by the fear of embarrassment or humiliation, with Plaintiff's counsel taking advantage of unrepresented Does' misunderstanding of the complexities of copyright law.

---

[1] As of January 14, 2011, by an informal count, well 75,000 people have been sued in similar (in some cases nearly identical) complaints arising from the alleged infringement of pornographic movies. This includes 4507 individuals sued in the Northern District of Illinois alone, in nine separate lawsuits. In addition, mass copyright complaints based on non-pornographic movies have also been brought against over 13,500 people in the District of Columbia.

The federal courts have safeguards, both procedural and substantive, to protect the rights of individual defendants. Those safeguards apply in all litigation regardless of the legal claims made and should be applied here as well. Certainly, copyright infringement is a legitimate basis for suit, and if many people engage in copyright infringement, many people may be sued. But the general safeguards developed by federal courts to ensure that all civil defendants get a fair chance to present their defenses always apply and, in a case such as this, have special importance.

Unfortunately, the Plaintiff in this mass copyright case has not complied with these safeguards. The first of those safeguards is personal jurisdiction. Plaintiff's own factual allegations show that almost all of the Doe Defendants are located outside this Court's jurisdiction and do not appear to have sufficient contacts with the Northern District of Illinois to support being haled into court here. The second safeguard is joinder. Plaintiff has improperly joined 500 unrelated Defendants into this single action, jeopardizing their right to an individual evaluation of their actions and defenses. As explained by a West Virginia federal court in response to a strikingly similar set of facts, "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *West Coast Productions v. Does 1-2010*, Case No. 3:10-CV-93 (N.D. W.Va., Dec. 16, 2010) (Exhibit A to Defendants' Request for Judicial Notice ("RJN")) (quoting *LaFace Records v. Does 1-38*, 2008 WL 544992, *2 (E.D.N.C. Feb 27, 2008)). Finally, Plaintiff has not met the First Amendment protective legal test for the discovery the identity of persons who have communicated anonymously online – indeed, it has failed even to articulate the correct test. As explained (for example) last year in *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131-33 (D.D.C. 2009), individuals who communicate anonymously online may be identified only if a plaintiff meets a multi-factor test designed to balance the right to seek redress for legitimate claims against the fundamental right to communicate anonymously. As demonstrated below, Plaintiff has not met that standard.

For these reasons, the instant subpoena and all other outstanding subpoenas should be quashed and Plaintiff should be instructed to:

2

1) bring suit against the individual Defendants in courts which appear likely to be able to properly exercise personal jurisdiction over the individual Defendants;

2) re-file this action against each defendant individually; and

3) meet the heightened First Amendment discovery standard prior to making any attempt to unmask the anonymous Defendants.

In addition, this Court should require that any future subpoena in this case seeking the identity of anonymous Defendants be accompanied by a cover notice ordering the Internet service provider in question to:

1) notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed and to briefly describe that person's rights and options for protecting such information; and

2) provide sufficient time and opportunity for the persons whose information has been sought to exercise those rights, such as by moving to quash. (Plaintiff should further be required to compensate the ISP for additional costs, if any, associated with providing notice.)

To assist the Court, we attach hereto a draft notice modeled on the procedures issued by the District Court for the Eastern District of Pennsylvania for cases brought by recording companies several years ago and by the District Court for the District of Columbia for the cases currently pending there. *See* Exhibit 1. *See also Elektra Ent. Group, Inc. v. Does 1-9*, No. 04 Civ. 2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004) (RJN Exhibit D); *BMG Music v. Does 1-203*, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004). The notice has been further updated based on counsel's experience assisting individuals identified in these cases to better explain the situation and address common questions. Such a notice would help ensure that Defendants have a fair opportunity to represent their interests.

## STATEMENT OF INTEREST

The Electronic Frontier Foundation ("EFF") is a non-profit, member-supported digital civil liberties organization. As part of its mission, EFF has served as counsel or *amicus* in key

3

cases addressing user rights to free speech, privacy, and innovation as applied to the Internet and other new technologies, including several of the cases discussed herein. With more than 14,000 dues-paying members, EFF represents the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age, and publishes a comprehensive archive of digital civil liberties information at one of the most linked-to web sites in the world, www.eff.org.

## ARGUMENT

I. **Plaintiffs Have Not Established that the Court Has Personal Jurisdiction Over the Vast Majority of the Defendants.**

As a threshold matter, Plaintiff has not met its burden to establish that this Court has personal jurisdiction over the vast majority of the Defendants. Absent such jurisdiction or, at the absolute minimum, a prima facie case for personal jurisdiction, the Court may not authorize or enforce any discovery. *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 877 (7th Cir. 2006) (holding a prima facie case for personal jurisdiction must be made, before discovery is allowed); *see also, e.g., Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir. 1985) (no authority to issue preliminary relief without personal jurisdiction); *accord United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1084 (1st Cir. 1992) (same). Therefore, and contrary to Plaintiff's suggestion, Opp. at 2, 5-6, the jurisdictional question is a live issue that the Court can and should consider.

The constitution imposes on every plaintiff the burden of establishing personal jurisdiction as a fundamental matter of fairness, recognizing that no defendant should be forced to have his rights and obligations determined in a jurisdiction with which he has had no contact. These requirements "give[] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v.*

4

*Woodson*, 444 U.S. 286, 297 (1980). Accordingly, the Plaintiff bears the burden of pleading specific facts sufficient to support the Court's exercise of personal jurisdiction over the Defendants. Simply reciting personal jurisdiction requirements is not enough, nor are the assertions of naked legal conclusions; rather, Plaintiff must assert the factual basis underlying its claims. *See, e.g., uBID, Inc. v. The GoDaddy Grp., Inc.*, 623 F.3d 423, 423 (7th Cir. 2010) (stating that plaintiff bears the burden of making a prima facie case for personal jurisdiction).

Plaintiff has offered two theories for the Court's exercise of personal jurisdiction over the Defendants: first, that "each Defendant may be found in this District" and second (in the alternative) that "a substantial part of the acts of infringement complained of herein occurred in this District" because the acts "occurred in every jurisdiction in the United States, including this one." Complaint ¶ 7. Plaintiff has not made a *prima facie* showing for either allegation for the vast majority of the Defendants, including Movants. Consequently, the motions to quash should be granted.

A.  <u>Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal Jurisdiction Over the Defendants Based on the Domicile of the Defendants.</u>

Federal courts may exercise personal jurisdiction over individuals whose domicile is within the jurisdiction. *See, e.g., Milliken v. Meyer*, 311 U.S. 457, 463-65 (1940); *Heartstation, Inc. v. J.L. Indus.*, No. 02 C 5994, 2003 U.S. Dist. LEXIS 5659, *7 (N.D. Illinois April 3, 2003) (holding "[a] defendant domiciled in a forum state or who has activities that are "substantial" or "continuous and systematic" is subject to the general jurisdiction of that state") (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). For the vast majority of the Defendants, Plaintiff plainly has not made a *prima facie* showing to support this purported basis for jurisdiction. The only jurisdictional facts alleged by Plaintiff are "a log of IP address [sic] identifying each Defendant, as well as the corresponding torrent file swarm/copyrighted work in which Defendant was participating and the date and time of Defendant's activity" that it includes as Exhibit A to its Complaint. Complaint at ¶ 19. In fact, the IP addresses that Plaintiff included in its Exhibit A not only do not provide any indication

5

that the majority of the Defendants' are likely to be residents of Illinois, they suggest that the Defendants were outside of Illinois when the allegedly infringing activity took place.

Plaintiff misleadingly suggests that the Court cannot determine whether there is a basis for personal jurisdiction until the Does' identities and residences are revealed. Opp. at 6. In fact, the Court (and Plaintiff) *can* determine, based on IP addresses collected, the likely location of the computers associated with those addresses. As explained in the accompanying declaration prepared by EFF Senior Staff Technologist Seth Schoen, many tools freely available to the public help reveal where a person using a particular IP address is likely to be physically located. Declaration of Seth Schoen ("Schoen Decl.") at ¶¶ 4, 5, 7, 12, 15. Two such techniques are reverse domain name service lookup or "reverse DNS" and access to the public database operated by the American Registry for Internet Numbers ("ARIN database"). *Id.* at ¶¶ 5, 12.

Mr. Schoen used these tools to determine where Defendants are likely to be located. *Id.* at ¶¶ 9, 11, 14. Mr. Schoen concluded that the IP addresses and related records indicated that the Does were likely located all over the country, from Hawaii to Florida. *Id.* at ¶¶ 7, 11, 14, 24. Just 4% appear to be located in Illlinois. Id at ¶23.

Thus, the available evidence – which was in Plaintiff's possession before it filed its Complaint – strongly suggests that the Plaintiff had no business invoking this Court's jurisdiction and using that invocation to obtain a discovery order. With no evidence supporting the claim that Defendants are "residents" of Illinois, and with the only proffered allegations supporting the opposite conclusion, the Court could not exercise personal jurisdiction over Defendants.

**B.** **Plaintiff Has Not Made a *Prima Facie* Showing that the Court Has Personal Jurisdication Over the Defendants Based on Alleged Acts of Copyright Infringment Occurring in "Every Jurisdiction, Including This One."**

Plaintiff alternatively argues that the Court has personal jurisdiction over the Defendants because the alleged acts of copyright infringement "occurred in every jurisdiction in the United States, including this one." Complaint at ¶ 7. Plaintiff has not met its *prima facie* burden supporting this jurisdictional argument either.

6

In order for a court to exercise personal jurisdiction over a non-consenting, non-resident defendant, suit in the forum at issue must be consistent with the requirements of the Due Process Clause. The Illinois long-arm statute has become co-extensive with the due process requirements under the federal and Illinois constitutions. *Keller v. Henderson*, 359 Ill. App. 3d 605, 611-612, 834 N.E.2d 930, 936 (Ill. App. 2005). Moreover, although Illinois due process requirements theoretically could diverge at some point from federal due process requirements, courts have held that "because Illinois courts have not elucidated any 'operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,' the two constitutional analyses collapse into one." *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04-C-6900, 2005 U.S. Dist. LEXIS 6244, slip op. at 5 (N.D. Illinois February 23, 2005) (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002)). That being said, "[d]ue process under the Illinois Constitution requires that it be 'fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois.'" *Keller*, 359 Ill. App. 3d at 619, 834 N.E.2d at 942 (quoting *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 565 N.E.2d 1302 (Ill. 1990)). Accordingly, a plaintiff must demonstrate that: (1) the non-resident has "minimum contacts" with the forum and that (2) requiring the defendant to defend its interests in that state "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 at 463). Plaintiff has not met this burden.

As discussed above, the only jurisdictional facts identified by the Plaintiff (i.e., the IP addresses it associates with each Defendant) give no indication that the copyright infringment occurred in this state. Plaintiff provides no additional evidence.[2] Without any *prima facie* evidence to support the claim that the alleged infringement took place within the state, Plaintiff

---

[2] Plaintiff itself appears to be located in Nevada, and the only real contact with Illinois appears to be the location of its counsel. But even if Plaintiff were in Illinois, that would not extablish where the act of infringement occurred.

7

has not established minimum contacts and therefore this Court cannot exercise personal jurisdication over the Doe Defendants.

To the extent that Plaintiff is suggesting a more expansive theory of personal jurisdiction based on the accessibility of information on the Internet as a whole, that argument too must fail. Courts have long since rejected the claim that the mere fact that the Internet permits access to information by residents of every state as well as other countries means that the person engaged in that activity can be sued anywhere in the United States. As the Fourth Circuit explained in *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002):

> The argument could . . . be made that the Internet's electronic signals are surrogates for the person and that Internet users conceptually enter a State to the extent that they send their electronic signals into the State, establishing those minimum contacts sufficient to subject the sending person to personal jurisdiction in the State where the signals are received. Under this argument, the electronic transmissions symbolize those activities ... within the state which courts will deem to be sufficient to satisfy the demands of due process. But if that broad interpretation of minimum contacts were adopted, State jurisdiction over persons would be universal, and notions of limited State sovereignty and personal jurisdiction would be eviscerated.

> In view of the traditional relationship among the States and their relationship to a national government with its nationwide judicial authority, it would be difficult to accept a structural arrangement in which each State has unlimited judicial power over every citizen in each other State who uses the Internet. . . . That thought certainly would have been considered outrageous in the past when interconnections were made only by telephones. . . . But now, even though the medium is still often a telephone wire, the breadth and frequency of electronic contacts through computers has resulted in billions of interstate connections and millions of interstate transactions entered into solely through the vehicle of the Internet.

*Id.* at 712-713 (citations omitted).

Accordingly, the Fourth Circuit limited the exercise of personal jurisdiction based on Internet usage to situations where the defendant

> (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.

*Id.* at 714.

The Seventh Circuit has similarly rejected theories of "national jurisdiction" based on Internet usage. *See generally Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004) ("Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country."). In *uBID, Inc.*, 623 F.3d at 423, for example, the court considered whether it had jurisdiction over a cyber-squatting claim brought by an Illinois-based auctioneer against an Arizona domain name registration corporation, based on the corporation's alleged intentional registration of domain names that were confusingly similar to auctioneer's trademarks and domain names. The court noted that while "physical geographical nexus is simply less important in cases where the alleged harm occurred over the Internet,"

> The plaintiff must still prove that the defendant had constitutionally sufficient contacts with the forum and that the defendant's contacts were temporally and substantively related to the lawsuit. Without that showing, the mere fact that the defendant allegedly caused harm by conducting business or advertising over the Internet is not adequate to establish jurisdiction in the plaintiff's chosen forum state.

*Id.* at 431 (citing *GTE New Media Services Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.1997)).

The court went on to find jurisdiction because there was an intimate substantive and temporal relationship between the contacts alleged in uBID's complaint and the wrongs alleged in uBID's complaint such that "GoDaddy cannot reasonably have been surprised to find itself sued in Illinois":

> The relationship between GoDaddy's Illinois contacts and uBID's claims is close enough to make the relatedness quid pro quo balanced and reasonable. GoDaddy has reached hundreds of thousands of people in Illinois with its advertising, which we know because it has made hundreds of thousands of sales in Illinois. How has GoDaddy advertised and made these sales? Based on the allegations in uBID's complaint, it has done so "by offering 'free parking' of a registrant's domain name." Complaint ¶ 20. Looking to the forum state's side of the bargain, what does the plaintiff charge GoDaddy with doing? The greatest part of uBID's complaint is devoted to allegations that, as the licensee of its registrants, GoDaddy "used and trafficked in" the free parked pages with bad-faith intent to profit from uBID's marks. Complaint ¶¶ 20-22; Ex. A.

9

*Id.* at 430-31.

Plaintiff has submitted no evidence of a comparable relationship here. Rather, it has offered a mere allegation that because the alleged distribution took place over the Internet, it occurred in every jurisdiction. Following *uBid*, that cannot suffice to establish this Court's jurisdiction.

Additional guidance may be found in *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010). In that case, the Defendants were alleged to have published false and defamatory statements about Tamburo; such messages included Tamburo's Illinois address and readers were urged to contact and harass him, and boycott his services. *Id.* at 698. The complaint also alleged that one defendant personally contacted Tamburo by email. *Id.* at 706. Thus, the allegations suggested that Defendants knew Tamburo lived in Illinois and operated his business here. Thus, although they acted from points outside the forum state, these defendants were alleged to have specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the "brunt of the injury" there. *Id.*

In the immediate case, even assuming that each of the Defendants knew that they were infringing Plaintiff's copyright, there is no evidence that Plaintiff has any connection to Illinois, or even more significant, that the Does were aware of such a connection. Consequently, Plaintiff has made no *prima facie* showing that any of the Defendants had any idea that Plaintiff would suffer any harm in Illinois.

Requiring individuals from across the country to litigate in this District – beginning with a motion to quash a subpoena for their identifying information -- creates exactly the sort of hardship and unfairness that the personal jurisdiction requirements exist to prevent. It requires the individuals urgently to secure counsel far from home, where they are unlikely to have contacts. In this particular instance the hardship is very clear, as the cost of securing counsel even to defend a Defendant's identity is likely more than the cost of settlement and possibly even more than the cost of judgment if the Defendant lost in the litigation entirely.

When the absence of personal jurisdiction is this apparent, the Court could and should

properly issue a *sua sponte* order quashing every subpoena issued in this case and ordering Plaintiff to re-file its Complaint in the jurisdiction only where the available evidence suggests an IP address is associated with a computer located in this district. And in any event, the instant motion to quash should be granted given Plaintiff's failure to meet the Due Process requirements set forth in *International Shoe* and its progeny.

### C. Plaintiff Cannot Undertake Discovery to Find Jurisdictional Facts.

Plaintiff's failure to meet its jurisdictional burden is to be determined before discovery is issued, not after. Plaintiff argues that it should be granted leave to seek discovery in support of its jurisdictional allegations. Opp. at 6-7. This effort, too, must fail.

When seeking discovery on personal jurisdiction, a plaintiff is required to make a prima facie showing of jurisdiction *before* she is entitled to discovery. *See, e.g., Cent. States,* 440 F.3d at 877 ("We therefore must determine if Central States made out a prima facie case for personal jurisdiction, which is required before it is allowed to conduct discovery."); *Fielding v. Hubert Burda Media,* 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir. 2003) (stating that a plaintiff's discovery request should be granted if the "plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts"). However, it is well within the district court's discretion to deny discovery requests where the plaintiff "offers only speculation" of jurisdiction; "fishing expeditions" into jurisdictional facts are strongly disfavored. *See, e.g., Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir. 2003); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory",* 283 F.3d 208, 216 n.3 (4th Cir. 2002) (holding that a court can deny a discovery request if "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"). Where, as here, the Plaintiff's own factual allegations plainly serve only to demonstrate the absence of jurisdiction, the Court should decline to extend this case further.[3]

---

[3] In addition, amici note that on October 1, 2010, this Court dismissed Plaintiff's underlying Complaint, albeit with leave to amend. Order of October 1, 2010 (Docket No. 10). Absent a live

## II.   Plaintiff Has Improperly Joined Thousands of Individual Defendants Based on Entirely Disparate Alleged Acts.

There is little doubt that Plaintiff's joinder of 500 Defendants in this single action is improper and runs the tremendous risk of creating unfairness and denying individual justice to those sued. Mass joinder of individuals has been disapproved by federal courts in copyright infringement cases based on computer downloads before. As one court noted:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

*BMG Music v. Does 1-203*, 2004 WL 953888, at *1 (severing lawsuit involving 203 defendants).

The language above was quoted with approval just last month in an Order issued December 16, 2010, by the United States District Court for the Northern District of West Virginia. *See West Coast Productions, Inc., v. Does* 1-535, No. 3:10-cv-00094-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 45, RJN Ex. A (quoting *BMG Music v. Does 1-203*, 2004 WL 953888, at *1). In that case, an ISP, Time Warner Cable, moved to quash a subpoenas seeking identifying information for numerous Doe defendants. (EFF filed a supporting amicus brief.) As here, the complaint alleged that all of the Does had used BitTorrent to commit copyright infringement (although in that case the Defendants were all alleged to have uploaded and downloaded a single copyrighted work). The court held that all defendants but Doe 1 were

---

complaint, however, any such order may exceed the authority granted to federal courts under the Federal Rules of Civil Procedure. *See*, e.g., Rule 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.") (emphasis added); Rule 45(a)(1)(A)(ii) (requiring that any discovery subpoena state "the title of the action, the court in which it is pending, and its civil-action number."). *See also*, e.g., Lonny Sheinkopf Hoffman, *Access to Information, Access to Justice: The Role of Presuit Investigatory Discovery*, 40 U. MICH. J.L. REFORM 217, 235-36 (2007) (discussing the limited number of states – and contrary to the Federal Rules – that authorize pre-complaint discovery into the identity of defendants). Accordingly, the discovery order – issued without an operative complaint, and thus not in furtherance of any claim or defense – must fail if the Court lacked the authority to issue it, and subpoenas are equally defective.

improperly joined, severed those defendants from the action, and quashed subpoenas seeking identifying information for those defendants. The Order stressed that any new actions against the severed Does may proceed only against Does with IP addresses of computers located within that court's jurisdiction. *Id.* at 4 n.2. Virtually identical Orders were issued in seven additional cases. *See Combat Zone, Inc., v. Does 1-1037*, No. 3:10-cv-00095-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 71; *see also Combat Zone, Inc., v. Does 1-245*, No. 3:10-cv-00096-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 28; *Patrick Collins, Inc., v. Does 1-118*, No. 3:10-cv-00092-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Patrick Collins, Inc., v. Does 1-281*, No. 3:10-cv-00091-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 42; *Third World Media, LLC, v. Does 1-1243*, No. 3:10-cv-00090-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 66; *West Coast Productions, Inc., v. Does 1-2010*, No. 3:10-cv-00093-JPB -JES (N.D. W. Va. Dec. 16, 2010), ECF No. 44.

As these courts recognize, Rule 20 requires that parties should not be joined in the same lawsuit unless the claims against them arise from a single transaction or a series of closely related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20. Thus, multiple defendants may be joined in a single lawsuit only when three conditions are met: (1) the right to relief must be "asserted against them jointly, severally or in the alternative"; (2) the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and (3) there must be a common question of fact or law common to all the defendants. *Id.*

District courts within the Circuit have declined to find joinder based solely on infringement of the same intellectual property. In *ThermaPure, Inc. v. Temp Air, Inc.*, No. 10-CV-4724, 2010 WL 5419090, at *4 (N.D. Ill. Dec. 22, 2002), for example, the District Court for

13

the Northern District of Illinois firmly rejected infringement of the same patent as a basis for

joinder. *Id.* ("Courts in this district . . . have consistently held that Rule 20(a)'s requirement for a

common transaction or occurrence is not satisfied where multiple defendants are merely alleged

to have infringed the same patent or trademark.) (collecting cases).

By the same token, the allegation of a similar method for committing the alleged illegal

activity cannot create a basis for joinder. *See e.g.*, *Nassau County Ass'n of Ins. Agents, Inc. v.*

*Aetna Life & Cas. Co.*, 497 F.2d 1151, 1154 (2d Cir. 1974) (refusing to allow 164 insurance

companies to be joined in a single action on the basis that they allegedly used the same methods

to cheat agents, describing that attempted joinder as "a gross abuse of procedure").

Thus, joinder based on separate but allegedly similar behavior by individuals using the

Internet to commit copyright infringement has been rejected by courts across the country.  In

addition to the above-cited Orders, the District Court for the Western District of Texas denied

efforts by recording industry plaintiffs to join 254 defendants accused of infringing their

copyrights by illegally downloading music, stating:

> The claim is against each defendant is individual, based on individual acts of each
> defendant, and if proven, will result in unique damage claims.  The defendants are
> not properly joined under Rule 20.

*UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004),

(RJN Exhibit B) (dismissing without prejudice all but the first of 254 defendants accused of

unauthorized music file-sharing).  Similarly, in *LaFace Records, LLC v. Does 1-38*, No. 5:07-

CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008), the court ordered severance of lawsuit

against thirty-eight defendants where each defendant used the same ISP as well as some of the

same peer-to-peer ("P2P") networks to commit the exact same violation of the law in exactly the

same way.  The court explained: "[M]erely committing the same type of violation in the same

way does not link defendants together for purposes of joinder." *Id.* at *2.  In *BMG Music v.*

*Does 1-4*, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31,

2006), the district court *sua sponte* severed multiple defendants in action where the only

connection between them was allegation they used same ISP to conduct copyright infringement.

*See also, e.g., Interscope Records v. Does 1-25*, No. 6:04-cv-197-Orl-22DAB, 2004 U.S. Dist.

LEXIS 27782 (M.D. Fla. Apr. 1, 2004) (magistrate recommended *sua sponte* severance of

multiple defendants in action where only connection between them was allegation they used

same ISP and P2P network to conduct copyright infringement); Order Granting in Part and

Denying in Part Plaintiffs' Miscellaneous Administrative Request for Leave to Take Discovery

Prior to Rule 26 Conference, *Twentieth Century Fox Film Corp. v. Does 1-12*, No. C-04-04862

(N.D. Cal. Nov. 16, 2004) (permitting discovery in copyright infringement action against twelve

defendants to identify first Doe defendant but staying case against remaining Does until plaintiff

could demonstrate proper joinder) (RJN Exhibit C).[4]

Indeed, the Does here are not even alleged to have infringed the same movie; they

apparently used different machines to allegedly access different works. *See* Complaint, Ex. A.

The only thing they all are alleged to share in common is using the same internet protocol. *See*

*Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) ( "[C]laims of

infringement against unrelated defendants, involving different machines, should be tried

separately against each defendant.") (quoting *New Jersey Mach. Inc. v. Alford Indus. Inc.*, Civ.

A. No. 89-1879(JCL), 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991). Put simply, the alleged

wrongful acts were committed by unrelated Defendants, at different times and locations,

sometimes using different services, and perhaps subject to different defenses. This kind of

attenuated relationship is not sufficient for joinder. *See, e.g., BMG Music v. Does 1-203*, 2004

WL 953888, at *1.

Even if the requirements for permissive joinder under Rule 20(a)(2) had been met, this

Court would have broad discretion to refuse joinder under Rule 21 in the interest of avoiding

prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental

---

[4] Defendants recognize that such judicial analysis has not been universal. *See, e.g., Motown Records v. Does 1-252*, No. 1:04-CV-439-WBH (N.D. Ga. Aug. 16, 2004) (denying motion to quash); *Virgin Records Am. v. Does 1-44*, No. 1:04-CV-0438-CC (N.D. Ga. March 3, 2004) (granting leave to take expedited discovery); *Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 568 (S.D.N.Y. 2004) (applying First Amendment balancing test but denying as premature motion to quash based on misjoinder and lack of personal jurisdiction).

fairness. *See, e.g., Intercon Research Assocs., Ltd. v. Dresser Indus, Inc.*, 696 F.2d 53, 57-58 (7th Cir. 1982) (citing *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)) ("[A] trial court must . . . determine whether the permissive joinder of a party will comport with the principles of fundamental fairness."); *see also Acevedo v. Allsup's Convenience Stores*, 600 F.3d 516, 521 (5th Cir. 2010); *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580-81 (E.D.N.Y.1999), and *Coleman v. Quaker Oats*, 232 F.3d 1271, 1296 (9th Cir.2000)). The Court should at minimum exercise that discretion in this case. Joining hundred of unrelated defendants in one lawsuit here may make litigation less expensive for Plaintiff by enabling it to avoid the separate filing fees required for individual cases and by enabling its counsel to avoid travel, but that does not mean these well-established joinder principles need not be followed.[5]

Amicus notes that the Court has cautioned Plaintiff to re-file against Defendant jointly only where there is "joint activity by similar defendants to name said defendants in one lawsuit." Minute Order, *First Time Videos LLC v. Does 1-500*, No. 1:10-cv-06254 (N.D. Ill. Oct. 1, 2010), ECF No. 10. Amicus urges the Court take the additional step of requiring Plaintiff to file against Defendants individually.

### III. Plaintiff Has Not Satisfied the Requirements Imposed by the First Amendment On Litigants Seeking to Unmask Anonymous Speakers.

Plaintiffs are often allowed discovery at the outset of a lawsuit to identify otherwise unknown persons alleged to have committed a legal wrong. However, in its motion for leave to seek early discovery, Plaintiff failed to properly apprise the Court of the appropriate discovery standard in cases where, as here, Defendants allegedly were engaging in anonymous communication and Plaintiff's claims arise from those alleged activities. Especially given the

---

[5] Several courts that have considered joinder in mass infringement cases have also noted that by filing a single lawsuit, the plaintiffs have avoided paying multiple filing fees. *See, e.g.*, General Order, *UMG Recordings, Inc., et al. v. Does 1-51*, No. A-04-CA-704 LY (W.D. Tex. Nov. 17, 2004, (RJN Exhibit B) (ordering severance of 254 defendants sued in four cases before it, and noting that: "[t]he filing fees for the recent four cases totaled $600, whereas the filing fees for 254 separate cases would have been $38,100.").

number of Doe Defendants affected and the pornographic nature of the works in question, it is crucial that the Court apply the correct procedure here and require Plaintiffs to follow the appropriate procedures before individuals' identities are disclosed.

### A. The Right to Engage in Anonymous Speech is Protected by the First Amendment.

Plaintiff entirely misunderstands the applicable test that must be applied before a Doe's identifying information is revealed. Plaintiff's hyperbole notwithstanding, no one has claimed that the First Amendment provides "a license for copyright infringement." Opp. at 10. However, the United States Supreme Court has consistently upheld the right to anonymous speech in a variety of contexts, noting that "[a]nonymity is a shield from the tyranny of the majority . . . [that] exemplifies the purpose [of the First Amendment] to protect unpopular individuals from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995); *see also Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 199 (1999); *Talley v. California*, 362 U.S. 60, 64 (1960). This fundamental right enjoys the same protections whether the context for speech and association is an anonymous political leaflet, an Internet message board or a video-sharing site. *Reno v. ACLU*, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet). *See also, e.g., Doe v. 2themart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (stating that the Internet promotes the "free exchange of ideas" because people can easily engage in such exchanges anonymously).

First Amendment protection extends to the anonymous publication of expressive works on the Internet, even if the publication is alleged to infringe copyrights. *See Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004) ("The use of P2P file copying networks to download, distribute or make sound recordings available qualifies as speech entitled to First Amendment protection."). *See also, e.g., In re Verizon Internet Servs. Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C.), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003); *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); *UMG Recordings, Inc. v. Does 1-*

*4*, No. 06-0652, 2006 WL 1343597, at *2 (N.D. Cal. Mar. 6, 2006). In *Sony*, the court concluded that a file sharer is "making a statement" by downloading a work without charge or license. *Sony*, 326 F. Supp. 2d at 564. In addition, a file sharer is expressing himself through the selection of content and by making it available to others. *Id.* Although sharing creative content is not "political expression" entitled to the "broadest protection," a file sharer is still entitled to "some level of First Amendment protection." *Id.* (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 at 346).

Because the First Amendment protects anonymous speech and association, efforts to use the power of the courts to pierce anonymity are subject to a qualified privilege.[6] Courts must "be vigilant . . . [and] guard against undue hindrances to . . . the exchange of ideas." *Buckley*, 525 U.S. at 192. Just as in other cases in which litigants seek information that may be privileged, courts must consider the privilege before authorizing discovery. *See, e.g., Sony*, 326 F. Supp. at 563 ("Against the backdrop of First Amendment protection for anonymous speech, courts have held that civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns."); *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987) (citing *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th Cir. 1977)) ("[W]hen the subject of a discovery order claims a First Amendment privilege not to disclose certain information, the trial court must conduct a balancing test before ordering disclosure.").

Only a compelling government interest can overcome such First Amendment rights, and the mere filing of a lawsuit does not make the identification of a defendant a compelling interest unless there is good reason to believe that the suit has a realistic chance of being successful. The identification of an anonymous speaker is a form of relief to the plaintiff (because it can enable extra-judicial self-help such as that seen in these mass lawsuits), and it harms the anonymous defendant, because once the right of anonymous expression is taken away, it cannot be

---

[6] A court order, even if granted to a private party, is state action and hence subject to constitutional limitations. *See, e.g., New York Times v. Sullivan*, 376 U.S. 254, 265 (1964); *Shelley v. Kraemer*, 334 U.S. 1, 14 (1948).

recovered. Relief – an order that benefits the plaintiff and hurts the defendant – is not customarily given without some proof of wrongdoing. Finally, if the courts allow anonymous speakers to be identified any time someone is willing to pay the filing fee for a lawsuit, we risk creating a significant chilling effect for anonymous speakers who are worried about the improper consequences of having their identities revealed.

On the other hand, the protection of anonymity should not be so great that plaintiffs with meritorious legal claims are unable to obtain redress of their grievances. If the rules make it too difficult to identify anonymous speakers, even when their speech abused the rights of others, the rules will unduly encourage irresponsible online speech. The need, therefore, is for the preservation of a legal and procedural standard that balances the rights of the anonymous speaker who claims to have done no wrong and the rights of the allegedly wronged speaker.

Thus, put in constitutional terms, the constitutional privilege to remain anonymous is not absolute. Plaintiffs may properly seek information necessary to pursue meritorious litigation. *See, e.g., Doe v. Cahill*, 884 A.2d 451, 456 (Del. 2005) ("Certain classes of speech, including defamatory and libelous speech, are entitled to no Constitutional protection."). However, litigants may not use the discovery power to uncover the identities of people without an appropriate basis. Accordingly, courts evaluating attempts to unmask anonymous speakers in cases similar to the one at hand have adopted standards that balance one person's right to speak anonymously with a litigant's legitimate need to pursue a claim.

In its motion for early discovery, Plaintiff relied on a qualified privilege test found in *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999). Plaintiff's Memorandum of Law in Support of Ex Parte Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Plaintiff's Motion") at 7. However, this test has long since been superceded in the same district in which it originated as insufficiently protective of the First Amendment interests of Internet speakers. *See generally Highfields Capital Mgmt, L.P. v. Doe*, 385 F. Supp.

2d 969 (N.D. Cal. 2005); *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010).[7]

Instead, courts rely on the seminal case of *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J.

App. 2001), in which the New Jersey Appellate Division adopted a four-prong test for protecting

anonymous speakers. Texas is among the many states across the country, several of which are

cited in footnote 11 below, where courts have followed *Dendrite*. *See, e.g., In re Does 1-10*, 242

S.W.3d 805 (Tex. Ct. App. 2007).

> Under *Dendrite*, a plaintiff must:

1) make reasonable efforts to notify the accused Internet user of the pendency of the
   identification proceeding and explain how to present a defense;

2) set forth the exact actions of each Doe defendant that constitute actionable cause;

3) allege all elements of the cause of action and introduce prima facie evidence for each Doe
   defendant sufficient to survive a motion for summary judgment; and

4) "[a]ssuming the court concludes that the plaintiff has presented a prima facie cause of
   action, the court must balance the defendant's First Amendment right of anonymous free
   speech against the strength of the prima facie case presented and the necessity for the
   disclosure of the anonymous defendant's identity to allow the plaintiff to properly
   proceed."

*Dendrite*, 775 A.2d at 760-61. The *Dendrite* test most accurately and cogently outlines the

important First Amendment interests of the Doe defendants and should be applied here.

---

[7] For examples of state appellate courts that have also applied tests far more stringent than
*Seescandy.com*, see, e.g., *Mobilisa, Inc. v. Doe*, 170 P.3d 712, 720 (Ariz. Ct. App. 2007), holding
that the *Seescandy.com* motion to dismiss standard "set[s] the bar too low, chilling potential
speakers from speaking anonymously on the internet" and that requiring a plaintiff to put forth
all elements of a prima facie case instead of merely a short and plain statement showing the
plaintiff is entitled to relief ensures "redress [for] legitimate misuses of speech rather than . . . a
means to retaliate against or chill legitimate uses of speech"; *Cahill*, 884 A.2d at 460, stating
"We conclude that the summary judgment standard is the appropriate test by which to strike the
balance between a defamation plaintiff's right to protect his reputation and a defendant's right to
exercise free speech anonymously"; *Krinsky v. Doe 6*, 72 Cal. Rptr. 3d 231 (Cal. Ct. App. 2008);
*Independent Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009); *Solers, Inc. v. Doe*, 977 A.2d 941
(D.C. 2009); and *Mortgage Specialists v. Implode-Explode Heavy Industries*, 999 A.2d 184
(N.H. 2010). Federal courts applying such tests include *Doe I and Doe II v. Individuals, whose
true names are unknown*, 561 F. Supp. 2d 249 (D. Conn. 2008); *Best Western Int'l v Doe*, No.
CV-06-1537-PHX-DGC, 2006 WL 2091695 (D. Ariz. Jul. 25 2006); *Sinclair*, 596 F. Supp. 2d
128; and *Salehoo v. Doe*, No. C10-0671JLR, 2010 WL 2773801 (W.D. Wash. July 12, 2010).

**B.** **Because Plaintiff's Proposed Discovery Cannot as Proposed Survive the Scrutiny Required by the First Amendment, Plaintiff's Motion Must Be Denied.**

The Plaintiff fails the *Dendrite* test demanded of litigants seeking the disclosure of the identities of anonymous speakers; consequently, Plaintiff's request for the issuance of early discovery should be denied.

**1.** **Plaintiff Has Not Made the Requisite *Prima Facie* Case for Each Defendant.**

Critically, Plaintiff has not provided sufficient *prima facie* evidence that any Defendant infringed Plaintiff's exclusive right to reproduce and distribute its copyrighted work. Plaintiff contends that each Defendant "participated and continues to participate in a BitTorrent swarm to reproduce and distribute to the public Plaintiff's copyrighted content." Complaint at ¶ 24. However, in support of this contention, Plaintiff proffers only the following factual allegations: (1) that by means of an undisclosed "proprietary techniques," Plaintiff's agent "locat[ed] swarms where peers are distributing Plaintiff's copyrighted creative works" and (2) then used the undisclosed proprietary technology to generate an attached list of 500 IP addresses that allegedly correspond to copyright infringing Defendants, as well as the date and time of the alleged infringing activity. Declaration of Paul Hansmeier in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Hansmeier Decl.") at ¶¶ 4, 6, 7. Plaintiff does not meet its *prima facie* burden with this meager showing.

Instead of the conclusory, generalized showing made to date, Plaintiff must instead present *specific* evidence resulting from the investigation, for *each* Defendant. At minimum, Plaintiff must present "competent evidence" regarding what the technology upon which it relies actually did in this case. It must document the investigative process actually used to obtain Plaintiff's proffered allegations about each and every Defendant, as well as competent evidence that would permit Defendants (and the Court) to evaluate the undisclosed technology's reliability and completeness. Without such evidence, the Court must simply take Plaintiff's word for it that its "proprietary" technology functions in a way that confirms actual copyright infringement, for instance that it functioned properly in this instance, how the technology collected the IP

addresses and linked them to an actual infringement of the movie, and that the IP addresses it provided are the IP addresses collected during this investigation, to ensure that no one is being falsely accused of downloading these pornographic movies. *See* Schoen Declaration at ¶ 25.

Such a requirement would be reasonable and consistent with the requirements set forth by other courts in similar file sharing cases. Those courts have found the *prima facie* burden met with the submission of screen shots showing the IP addresses of each Defendant (so the court can see that the submitted IP addresses match those discovered during the investigation), copies or real-time capture of the activities of the "licensed technologies" used, proof that the downloaded movie was the same as the Plaintiff's original film, and shots of the P2P server logs to which the Plaintiff claims to have had access. *See, e.g., Elektra Ent. Group, Inc,* 2004 WL 2095581, at *4. Such evidence is already available to the Plaintiff prior to discovery and must be provided as part of its *prima facie* showing. *See Dendrite*, 775 A.2d at 769-70 (presenting allegations of a link between Defendant's posts and stock prices without proof of causation was not sufficient to survive the heightened discovery standard provided by the First Amendment). *See also* Schoen Decl. at ¶¶ 25-26.

Moreover, the allegations of the Complaint do not establish that Plaintiff has any right to sue for statutory damages or attorney fees. The Complaint alleges that Plaintiff has applied for registration of its copyrights in the works in question, but does not disclose the *date* on which the applications were filed. The fact that Plaintiff alleges application rather than completed registration implies that the application was filed not long before the Complaint was filed. And under 17 U.S.C. § 412, a plaintiff cannot sue for statutory damages or attorney fees unless the infringement "commenced after first publication of the work and before the effective date of its registration, unless the registration is made within three months after the first publication of the work." Plaintiff should be required, perhaps in response to an order to show cause, to introduce evidence creating a *prima facie* case of entitlement to sue *these* anonymous Defendants for statutory damages and attorney fees. If it cannot, we urge the Court to consider exercising its inherent powers and strike the claims for statutory damages and attorney fees.

2. **Given Plaintiff's Meager Factual Showing and the Immense Harm to Defendants that Would Occur if Plaintiff's Motion Was Granted, Defendants' First Amendment Interests Strongly Outweigh Plaintiff's "Need" for Their Identities.**

Even if Plaintiff could marginally satisfy the other steps of the Doe standard required by the First Amendment as set forth in *Dendrite* et al., the Court must still "balance the defendant's First Amendment right of anonymous free speech against the strength of the *prima facie* case presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Dendrite*, 775 A.2d at 760-61. To be sure, creators of pornography have the same protections as other copyright holders, but the pornographic nature of the material that Plaintiff alleges has been improperly downloaded creates a very serious risk of reputational harm resulting from a mistaken identification. And especially given the Plaintiff's improper joinder of over 500 Defendants over whom the Court cannot exercise personal jurisdiction, as well as the lack of transparency about the means by which the Plaintiff generated its list of "infringers," the Court should exercise great caution and prevent Plaintiff from bypassing procedural protections and taking shortcuts to achieve its end.

Although Plaintiff has not elaborated on its motives in bringing suit, the invasive, sweeping manner in which it was brought indicates that it hopes to leverage the risk of public embarrassment to convince Defendants to quickly capitulate, whether or not they did anything wrong. Moreover, plaintiffs' lawyers in this area are also able to demand settlements because they can threaten to sue for statutory damages and attorney fees. Such relief, however, may be unavailable in this case because (as discussed above at page 22), unless the copyrights in the works in questions were timely registered. Plaintiff's quest for identifying information in this case, therefore, appears to be nothing more than an effort to use the judicial process to extract settlements on a mass scale, before the flaws in its case can be exposed.

Indeed, Plaintiff's lawsuit is consistent with a coordinated strategy of porn industry representatives who have clearly indicated that the coercive threat of public disclosure motivates the recent increase in dragnet copyright cases brought by porn publishers. Discussing this new litigation strategy, Pink Visual, which recently "rall[ied] dozens of adult entertainment studio

23

operators at an unprecedented Content Protection Retreat in Arizona in October to train in ways

to combat piracy and defend intellectual property," stated in an interview with Agence France

Presse:

> "It seems like it will be quite embarrassing for whichever user ends up in a lawsuit about using a popular shemale title," Vivas said, using a term that refers to a person who has female features but male genitalia.

> "When it comes to private sexual fantasies and fetishes, going public is probably not worth the risk that these torrent and peer-to-peer users are taking."

*Porn Titans Come Together to Expose Pirates*, THE INDEPENDENT (Sept. 27, 2010)

http://www.independent.co.uk/arts-entertainment/films/porn-titans-come-together-to-expose-

pirates-2090786.html. Other copyright lawyers have concurred that the threat of exposure as

downloaders of pornography is well calculated to induce the Doe defendants to settle quickly.

John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases*, TEXAS

LAWYER, Oct. 4, 2010 ("I would suppose that most people would want to settle rather than being

named in a lawsuit of this nature.").

The success or failure of Plaintiff's lawsuit should rest on the merits of its claim against

each individual Doe, not upon the risk of targeting through an insufficiently pleaded and

improperly joined "name and shame" campaign. The Court should at minimum require that

Plaintiff resolve the serious shortcomings in its evidentiary showing before the Court authorizes

any discovery to proceed.

### 3. Plaintiff Must Ensure that Defendants Receive Notice of Its Pending Claim and Its Efforts to Unmask Them.

In addition to the substantive requirements identified by *Dendrite* and its progeny, the

First Amendment also requires that the anonymous Defendants be given adequate notice of the

pending action and of Plaintiff's attempts to unmask them. *Dendrite*, 775 A.2d at 760-61.

Plaintiff must be required to make such efforts so that Defendants can fully explore defenses

available to them.

Accordingly, in the event that the Court permits discovery to go forward, this Court

should require that any subpoena in this case by Plaintiff to Internet Service Providers (ISPs)

seeking the identity of anonymous Internet users must be accompanied by a cover notice ordering the ISP:

> (a) to notify, within seven days of service of the subpoena, any person whose information has been sought that such information may be disclosed, and briefly describe their rights and options for protecting such information; and
>
> (b) to provide sufficient opportunity for the subscriber to exercise those rights, such as by moving to quash. (Plaintiff may be required to compensate the ISP for additional costs, if any, associated with providing notice.)

To assist the Court, counsel has attached hereto a draft notice modeled on the procedures issued by other courts hearing similar cases. *See* Exhibit 1. The notice has been further updated based on counsel's experience assisting individuals identified in these cases to better explain the situation and address common questions. Such procedures will help ensure that Plaintiff, Defendants, and the ISPs involved all have a fair opportunity to represent their interests.

## CONCLUSION

Plaintiff has the right to seek legal redress for alleged copyright infringement, but it must follow the basic procedures and due process requirements applicable to all civil litigation. Failure to abide by these procedures is not only contrary to law, it puts the anonymous Defendants at a disadvantage where they will first lose their constitutionally protected anonymity and then find settlement economically more feasible than litigation in a foreign jurisdiction, even though they may have committed no unlawful act or may otherwise have meritorious defenses.

Defendants therefore respectfully urge this Court to grant the instant motions to quash on the grounds that (a) it lacks personal jurisdiction over the majority of the 500 Defendants, (b) all 500 Defendants were improperly joined in this single action, and (c) Plaintiff cannot meet the requirements of the First Amendment designed to protect anonymous speech. Moreover, given the unavoidable jurisdictional and joinder deficiencies inherent in Plaintiff's Complaint, and the serious concern about the availability of statutory damages, Defendants also urge the Court to *sua sponte* quash all outstanding subpoenas, and require that Plaintiff re-file individual cases against individual Defendants in courts that can properly exercise jurisdiction. If the cases are

re-filed with claims for statutory damages and attorney fees, Plaintiff should be required to show that such relief is available.

Dated: January 14, 2011

Respectfully submitted,

/s/Charles Lee Mudd Jr.
Charles Lee Mudd Jr.
cmudd@muddlawoffices.com
ARDC #: 6257957
Mudd Law Offices
3114 West Irving Park Road
Suite 1W
Chicago, Illinois 60618
Phone: 773.588.5410
Fax: 773.588.5440

Corynne McSherry
corynne@eff.org
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
Phone: 415.436.9333 x122
Fax: 415.436.9993

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICK HAIG PRODUCTIONS, E.K.,  §
                              §
          Plaintiff,          §
                              §
v.                            §          Civil Action No. 3:10-CV-1900-N
                              §
DOES 1-670,                   §
                              §
          Defendants.         §

## ORDER

This Order addresses in part Plaintiff Mick Haig Productions, E.K.'s, ("Mick Haig") motion for leave to take discovery prior to Rule 26(f) conference (the "Discovery Motion") [2]. The Court finds that the Discovery Motion concerns matters that could materially affect the Defendant Does 1-670's interests. But, because the Defendants' identities have yet to be ascertained, the Does cannot represent their interests before this Court.

Accordingly, the Court appoints the individuals listed in Exhibit A to this Order to serve as attorneys ad litem, without compensation, for the Defendant Does. This appointment will terminate upon disposition of the Discovery Motion. The Court further orders that the attorneys ad litem are admitted to practice before the Court *pro hac vice*. The Defendants shall file their response to the Discovery Motion no later than November 24, 2010.

ORDER – PAGE 1

Signed October 25, 2010.

David C. Godbey
United States District Judge

ORDER – PAGE 2

## Exhibit A

Cindy Cohn
Electronic Frontier Foundation
454 Shotwell St.
San Francisco, CA 94110
T: (415) 436-9333
F: (415) 436-9993
cindy@eff.org

Matt Zimmerman
Electronic Frontier Foundation
454 Shotwell St.
San Francisco, CA 94110
T: (415) 436-9333
F: (415) 436-9993
mattz@eff.org

Paul Alan Levy
Public Citizen Litigation Group
1600 – 20th St., N.W.
Washington, D.C. 20009
T: (202) 588-1000
F: (202) 588-7795
plevy@citizen.org

ORDER – PAGE 3

# EXHIBIT 5

## Judge kills massive P2P porn lawsuit, kneecaps copyright troll

By Nate Anderson | Last updated 3 months ago

Only 10 days after a federal judge in Washington, DC sharply limited the US Copyright Group's mass file-sharing lawsuits there, a federal judge in West Virginia has come down even harder on another set of mass lawsuits. Ken Ford, the lawyer behind the Adult Copyright Company, has just had his business model chopped off at the knees; not only did Judge John Preston Bailey dismiss every defendant but one in Ford's mass lawsuits, he also demanded that each case be filed separately and that Ford only submit IP addresses likely to map to West Virginia Internet users.

From his base in Martinsburg, West Virginia, Ford has rapidly eclipsed his mentors at the US Copyright Group. Between September 24 and November 11 of this year, Ford filed nine mass lawsuits against more than 22,000 alleged file-swappers, each accused of sharing pornographic films with titles like *Teen Babysitters* and *Teen Anal Nightmare 2* and *Batman XXX: A Porn Parody*. Ford's initial lawsuits were releatively small, but he had enough confidence in his method by late October that he began filing against 7,000 and then 9,000 individuals at once.

The judge overseeing these cases has had enough. In a series of orders today that cover all seven of Ford's initial September cases, the judge "severed" every defendant but one. If Ford wants to proceed against all these people, he can do so individually and pay the $350 per case filing fee. (For the cases severed yesterday, this would amount to $1.8 million in filing fees alone.)

| | | | |
|---|---|---|---|
| 3:10-cv-00090-JPB-JES | Third World Media, LLC v. Does 1-1243 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00091-JPB-JES | Patrick Collins, Inc. v. DOES 1-281 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00092-JPB-JES | Collins, Inc. v. DOES 1-118 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00093-JPB-JES | West Coast Productions, Inc. v. Does 1-2010 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00094-JPB-JES | West Coast Productions, Inc. v. DOES 1-535 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00095-JPB-JES | Combat Zone, Inc. v. Does 1-1037 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00096-JPB-JES | Combat Zone, Inc. v. DOES 1-245 | filed 09/24/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00112-JPB | Axel Braun Productions v. DOES 1-7098 | filed 10/29/10 | 28:1338cp(28:1338 Copyright Infringement) |
| 3:10-cv-00113-JPB | West Coast Productions, Inc. v. Does 1-9729 | filed 11/04/10 | 28:1338cp(28:1338 Copyright Infringement) |

Ford has brought every single open copyright case in W. Virginia's Northern District

The judge noted that it's simply not proper to "join" this many defendants who did not participate in the same transaction and did not work together. The mere allegation that the defendants used the same P2P software and infringed the same movie does not mean they can be can be joined into a single lawsuit. Everyone being targeted might well have a totally different defense, and the judge approvingly cites a 2004 ruling against the music industry.

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed

Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

In addition, Ford may only refile individual cases against those living in West Virginia, rather than using one district court to do IP lookups on people all over the US. Time Warner Cable (again) objected to this practice, and the judge concurred, pointing out that geolocation tools on the Web can often identify the basic location used by an IP address. Even without geolocation, Ford should know that some ISPs don't even offer service in West Virginia and therefore can't possibly have their IP addresses map to West Virginia subscribers.

▶ **Is Ken Ford Suing You?**
Settle Your Case Today, For Your Free Phone Consultation Call Now!
www.313Defense.com

## Home of the **Adult Copyright Company** ☆ ✎
The **Adult Copyright Company** was founded for the exclusive purpose of monitoring illegal downloading of adult films and content, and using the legal system ...
www.adultcopyrightcompany.com/home.html - Cached

Ford has sued enough people that lawyers are taking out ads on his company name

All of these cases can therefore continue, but they must be brought individually, and in the local jurisdiction of the subscriber. Though Ford's Adult Copyright Company says it has "assembled a network of attorneys with the ability to pursue individual claims against infringers in their own jurisdictions," costs are certain to be high. And as Jammie Thomas-Rasset has showed us, even collecting money when you win can be extraordinarily difficult in the face of angry defendants and award-limiting judges.

If the porn industry wants to stop online piracy by 2012, it's going to need some new tactics—or a whole lot of cash.

**Further reading**

- EFF, which participates in the cases, is hosting copies of the orders (eff.org)

# EXHIBIT 6

# Texas chainsaw massacre: senior judge "severs" most P2P lawsuits

By Nate Anderson | Last updated about a month ago

Texas no longer welcomes mass Internet file-sharing lawsuits.

Last month, we profiled Evan Stone, the Denton, Texas attorney who has brought nearly every Internet file-sharing lawsuit in the state since getting into the business in mid-2010. Stone sues a few hundred to a few thousand anonymous defendants on behalf of his client, has Internet providers look up their real names and addresses, then asks them to settle for a couple thousand bucks before he files a federal lawsuit against them personally. Most cases have involved pornography distributed by BitTorrent, but Stone recently convinced the anime distributor FUNimation to adopt the technique after much hesitation on the part of the FUNimation.

Stone's name is currently attached to 16 cases in the Northern District of Texas, where he brings his suits, but 13 of those cases now show only a single anonymous Doe defendant. Why? Senior US District Judge Royal Ferguson went on a judicial clear-cutting expedition throughout last week, whacking away at nearly all of Stone's cases, "severing" the hundreds of defendants and quashing Stone's subpoenas to Internet providers. Even named defendants who were already listed as being in default for not showing up to court got a reprieve.

If Stone wants to pursue file-sharing litigation, he can do so—but only by filing "individual complaints against those Does" in the next 30 days. That means a $350 filing fee per defendant, plus mountains of paperwork for each case.

| | | |
|---|---|---|
| 3:10-cv-01407-F | Lucas Entertainment, Inc. vs Doe 1 | filed 07/17/10 |
| 3:10-cv-01537-F | Lucas Entertainment Inc v. Doe 1 | filed 08/09/10 |
| 3:10-cv-01702-F | VCX Ltd., Inc. v. Doe 1 | filed 08/27/10 |
| 3:10-cv-01863-F | LFP Internet Group, LLC v. Doe 1 | filed 09/17/10 |
| 3:10-cv-01900-N | Mick Haig Productions, e.K. v. Does 1-670 | filed 09/21/10 |
| 3:10-cv-02094-F | LFP Internet Group LLC v. Doe 1 | filed 10/15/10 |
| 3:10-cv-02095-F | LFP Internet Group, LLC v. John Doe 1 | filed 10/17/10 |
| 3:10-cv-02096-F | LFP Internet Group LLC v. DOES 1 - 1,106 | filed 10/18/10 |
| 3:10-cv-02139-F | LFP Internet Group LLC v. DOE 1 | filed 10/22/10 |
| 3:10-cv-02412-F | Harmony Films Ltd v. Doe 1 | filed 11/25/10 |
| 3:10-cv-02605-F | Adult Source Media v. Doe 1 | filed 12/21/10 |
| 3:11-cv-00001-F | D & E Media, LLC v. Doe 1 | filed 01/02/11 |
| 3:11-cv-00002-F | Serious Bidness, LLC v. Does 1 | filed 01/02/11 |
| 3:11-cv-00056-F | Steve Hardeman, LLC v. Doe 1 | filed 01/10/11 |
| 3:11-cv-00101-P | Justin Slayer International, Inc. v. Does 1 - 1,254 | filed 01/17/11 |
| 3:11-cv-00147-F | FUNimation Entertainment v. Doe 1 | filed 01/24/11 |

Stone's cases have been pruned

In his FUNimation order severing 1,336 of the 1,337 defendants, Judge Ferguson objected, saying that the defendants had nothing material in common. "There are no allegations in Plaintiff's Complaint that the Defendants are in any way related to each other, or that they acted in concert or as a group in their allegedly infringing actions... Indeed, it seems that the copyright infringement claim against each Defendant is based on the individual acts of each Defendant."

Simply saying that everyone used BitTorrent isn't enough to join defendants, and the judge notes that each defendant "will also likely have a different defense." He then cited a judicial decision from West Virgina in which a judge took an axe to a host of P2P porn cases filed there last year.

## Not a game

That's certainly bad for Stone's business, but it's not his only problem at the moment. One of the cases that was *not* severed only escaped judicial scrutiny because Stone <u>recently dismissed it</u>—apparently over the claim that he had issued subpoenas in that case without the judge's permission and was caught with his hand in the cookie jar. The judge in that case had asked the Electronic Frontier Foundation and Public Citizen to step in on behalf of the case's anonymous defendants; when these two groups learned that Stone had issued subpoenas to (at least) Comcast and Verizon, they were furious.

On February 11, they sought sanctions against Stone. "Discovery is not a game, nor is it a tool to be wielded irresponsibly as a means in and of itself to coerce extra-judicial concessions from litigation opponents," they wrote. "Moreover, given the nature of the material about which this suit was filed, it was entirely predictable that many of the Does who received notices of subpoena from their ISPs as a result of the improper subpoenas would experience serious distress at the prospect of public accusations of having some involvement in the distribution of pornographic material... Mr. Stone and other lawyers who file cases of this sort are obviously aware of the anxiety that notice of their discovery can cause."

They also included an e-mail from Stone to Public Citizen's Paul Levy, stating, "It's hardly in your best interest to pursue sanctions against me at this point, but I'm sure you'll do it anyway since this has become so personal for you. Either way, you're not going to stop my clients from seeking justice so long as their content is being pirated."

Stone had no comment.

# EXHIBIT 7

**E-FILED**
Friday, 29 April, 2011  09:02:53 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VPR INTERNATIONALE, | ) | |
| | ) | |
| Plaintiff, | ) | 11-2068 |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1 - 1017, individually and as | ) | |
| representatives of a class, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The plaintiff, VPR Internationale, is a Montreal, Quebec-based producer of adult entertainment content. VPR has filed this complaint against 1,017 Doe defendants identified only by Internet Protocol ("IP") address. VPR alleges that these defendants have distributed adult videos in violation of VPR's copyrights. To determine the identity of the 1,017 alleged copyright infringers, VPR filed an *ex parte* motion for expedited discovery so that it could immediately serve subpoenas on Internet service providers ("ISPs") to determine the subscriber and location associated with each IP address. The court denied the motion for expedited discovery [9]. VPR filed an *ex parte* motion for reconsideration, which was denied on March 22, 2011, by text order.

VPR has now filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery. VPR seeks certification for one controlling question of law:

Defendants' identifies are unknown to the Plaintiff. Instead, each Defendant is associated with an Internet Protocol (IP) address. Internet Service Providers (ISPs) know identity and contact information associated with each IP address. Is the Plaintiff to entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Fed. R. Civ. P. 26(d)(1) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." In this case, VPR may seek expedited discovery only by court order.

Arguing in favor of certification, VPR directs the court's attention to its motion for reconsideration. In its memorandum, VPR concedes that the relief sought falls outside traditional adversarial procedure, and states that there is no legal basis to name the ISP providers as defendants. VPR compares the Doe defendants' IP addresses to "records of *who* rented *which* car at a busy car rental agency, in that IP addresses are like cars "leased by subscribers. If a

1

plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred. Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car." The comparison is not apt. The rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information. And such information is not necessarily confidential; accident reports and police records may also identify the driver.

In this case, not a single one of the plaintiff's 1,017 potential adversaries has been identified. There is no adversarial process yet. Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer. The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas. The potential filing of a motion to quash is no reason to abandon the adversarial process. As VPR points out, *ex parte* motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed. In at least one case, counsel[1] has sought leave to amend the complaint to add more Doe defendants. *See Lightspeed Media Corp. v. Does 1 - 100*, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101 - 1000 as defendants). In *Hard Drive Productions, Inc. v. Does 1 - 1000*, counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff. *Hard Drive*,

---

[1] VPR is represented by John Steele, Esq. Steele represents other adult entertainment producers in cases now (or recently) pending in the Northern and Southern Districts of Illinois.

Case No. 1:10-cv-05606, d/e 33 (N.D. Ill.).[2]  Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."[3]  Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong?  The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions.  Order, d/e 9.

The motion to certify for interlocutory review [14] is denied.

Entered this 29th day of April, 2011.

**\s\Harold. A. Baker**

———————————————
HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2] In *Lightspeed*, only one defendant has been named and his case severed; the ISP subpoenas have been quashed, the other Does are dismissed, and Steele has been ordered to notify the Does that they are no longer potential defendants in the case. *See* Case No. 1:10-cv-05604, d/e 57 (N.D. Ill.).

[3] MSNBC article, p. 2.

3